**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **ANTHONY NIEDENS,** ) <br> ) <br> **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> ) <br> **CONTINENTAL CASUALTY COMPANY** ) <br> ) <br> **Defendant.** ) <br> ) | **CIVIL ACTION** <br><br> **No. 05-2176-CM** |

**MEMORANDUM AND ORDER**

This matter comes before the court on plaintiff Anthony Niedens' Cross-Motion for Summary Judgment (Doc. 29); Defendants Continental Casualty Company ("CCC") and The Hartford Financial Services Group, Inc.'s Motion for Summary Judgment (Doc. 31);[1] and Niedens' Motion to Strike Affidavit and Records Not Contained in the Administrative Record at the Time of the Decision to Deny Niedens' [sic] His Long Term Disability Benefits (Doc. 38).

**I.    Factual Background**[2]

Plaintiff is a former Medical Salesperson for Stryker Corporation. On December 29, 2001, he quit working for Stryker. On January 4, 2002, he applied for disability benefits under the Stryker Corporation Group Long Term Disability Plan (the "Plan"). Plaintiff identified his medical condition or diagnosis as Crohn's Disease and reported that he had constant diarrhea. He received long-term

---

[1] Since the filing of this motion, The Hartford Financial Services Group, Inc. has been dismissed and is no longer a party to this litigation or this motion.

[2] The court construes the facts in the light most favorable to the non-moving party pursuant to Fed. R. Civ. P. 56. The court has combined the facts proposed by both parties, and included only those that are relevant, material, and properly supported by the record.

disability benefits from March 29, 2002 though March 28, 2004 under the Plan's provision allowing benefits for the initial 24 months of being disabled. After the initial 24 months, plaintiff sought long-term benefits under a provision allowing benefits subsequent to the initial 24 months. Plaintiff continued to receive benefits while the administrator considered his claim. After reviewing his claim, the administrator denied it. Plaintiff's long-term benefits were terminated as of February 1, 2005. Plaintiff appealed the decision, but the administrator upheld its decision.

The Stryker Plan is an employee welfare benefit plan within the meaning of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1002(1). The Plan provides plan administrators and fiduciaries discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to benefits in accordance with the Plan. The benefits provided under the Plan are funded and administered by an insurance policy issued by defendant (the "Policy"). Initially, defendant, through CNA Group Life Assurance Company, handled the claims decisions. But months before the decision to deny plaintiff's claim, the CNA Group Life Assurance Company became a subsidiary of The Hartford and changed its name to Hartford Life Group Insurance Company ("HLGIC"). HLGIC continued to service plaintiff's claim at defendant's request and made the final decision to deny plaintiff's claim. In reaching its decision, HLGIC relied on the policy language, medical evidence, video surveillance, vocational assessment, including a labor market survey, and plaintiff's statements.

Under the Policy, the definition of disability changes after the initial 24-months of eligibility:

> "*Disability*" means that during the *Elimination Period* and the following 24 months, *Injury* or *Sickness* causes physical or mental impairment to such a degree of severity that *You* are:
> 1. continuously unable to perform the *Material and Substantial Duties* of *Your Regular Occupation*; and

> 2. not working for wages in any *gainful occupation* for which *You* are or become qualified by education, training or experience.
>
> . . .
>
> After the *Monthly Benefit* has been payable for 24 months, *"Disability"* means that *Injury* or *Sickness* causes physical or mental impairment to such a degree of severity that *You* are:
> 1. continuously unable to engage in any *gainful occupation* for which *You* are or become qualified by education, training or experience; and
> 2. not working for wages in any *gainful occupation* for which *You* are or become qualified by education, training or experience.
>
> *Gainful Occupation* means an occupation that is or can be expected to provide you with an income at least equal to 60% of your indexed monthly earnings within 12 months of your return to work.

In his statements, plaintiff reported that he visits the restroom 9.5 times a day, that his condition is unpredictable, and that he is in constant pain. He also questioned the effectiveness of the anti-diarrheal drug Lomotil. Plaintiff was under video surveillance for six days between May 26, 2004 and August 15, 2004; the surveillance was only conducted for two days at a time. The surveillance showed plaintiff doing yard work, standing and walking normally, driving, and being away from his house for relatively short periods of time, less than three hours at any one time. During the surveillance plaintiff did not appear to be in immediate need of a restroom or in pain.

Dr. Thomas Barnett, Jr., plaintiff's treating gastroenterologist, provided testimony, medical records, and other information to HLGIC. He reported that plaintiff has Crohn's Disease. He also reported that plaintiff has good and bad days and that his condition is unpredictable, but is somewhat controllable with Lomotil. Dr. Barnett did not place any restrictions or limitations on plaintiff. Dr. Barnett concluded that plaintiff could perform sedentary work if he had immediate access to a restroom, but that he could not travel long distances.

Dr. Matthew N. Apter conducted an independent review of plaintiff's medical records. Dr. Apter determined that there was no evidence of active Crohn's Disease. He also reported that there

was a disparity between the medical records and plaintiff's statements about the frequency of his diarrhea and the effectiveness of Lomotil. Dr. Apter thought that plaintiff's condition could be controlled with Lomotil. Dr. Apter concluded that plaintiff was disabled, but could work as long as he had immediate access to a restroom and was allowed to take frequent bathroom breaks. Dr. Apter later added an addendum to his report, in which he concluded that if plaintiff took a maintenance dose of Lomotil, plaintiff might be able to work full-time if he had immediate access to a restroom. On appeal, plaintiff objected to Dr. Apter's conclusions, alleging that Dr. Apter was incompetent because he had consented to an allegation by the Florida Department of Health that he had failed to practice medicine with the level of care, skill, and treatment of a reasonably prudent physician.

After plaintiff expressed concerns about Dr. Apter's medical conclusion, a second independent review was conducted in April 2005 by Dr. Charles M. Bliss, Jr., a Board Certified gastroenterologist. Dr. Bliss reviewed the evidence including plaintiff's medical records, the video surveillance, Dr. Barnett's deposition, and plaintiff's February 28, 2005 affidavit. Dr. Bliss concluded that plaintiff has intermittent episodes of increased pain and uncontrollable diarrhea, but that he could perform a sedentary occupation as long as he had access to a restroom.

A Vocational Assessment was conducted in January 2005. As part of the Vocational Assessment, HLGIC hired an independent third-party, Pinder Rehabilitation Services ("Pinder"), to conduct a Labor Market Survey ("LMS") to determine the availability of alternative occupations. HLGIC requested Pinder to survey office type jobs that (1) did not involve traveling; (2) would have immediate access to a restroom; (3) would allow bathroom breaks as needed; (4) would allow the employee to be primarily seated; and (5) would involve sedentary to light lifting. The LMS determined that plaintiff could perform the following occupations: Medical Device Sales Representative, Patient Monitoring Sales Representative, Inside Sales Specialist, and Investment

-4-

Representative. According to the survey, these occupations are available in plaintiff's geographical location at a gainful wage[3]. Based on the LMS, the Vocational Assessment concluded that plaintiff could find work in a gainful occupation.

When plaintiff appealed the decision, he argued that the LMS was fraudulent, alleging that Pinder did not actually contact the survey participants as reported in the LMS and that the information reported in the survey was inaccurate. Plaintiff submitted affidavits to support his allegations; however, most of them are unsigned, unsworn, and not notarized. The sworn affidavit of plaintiff's counsel, Mr. Hufft, states that Mr. Hufft contacted the survey participants and that they all denied or did not recall speaking with Pinder and/or denied having the open position listed in the survey. The sworn affidavit of Kristy Gramlich contradicts the information in the LMS about AFLAC. Ms. Gramlich, who leases space to independent contractors for AFLAC, states that no one named Pat worked at the 509 Walnut, Kansas City, Missouri address and that AFLAC does not have a human resources department at the address. The sworn affidavit of Jean Parker states that she never spoke with anyone from Pinder, that the information attributed to her in the LMS is incorrect, and that she is a secretary at IBT, not a manager. The remaining affidavits contradict information provided in the LMS, but are unsworn. Plaintiff also provided his own sworn affidavit, which states that a sales person cannot make over $100,000 without putting in face time with clients and that he could not make $105,000 a year in the occupations listed in the LMS due to his condition.

Cheryl Sauerhoff, an Appeal Team Leader for HLGIC, was responsible for addressing plaintiff's concerns about the LMS. In response to plaintiff's concerns, HLGIC requested Pinder to provide documentation that the contacts reported in the LMS had been made. Pinder sent HLGIC

---

[3]In this case, a gainful wage or occupation is one in which plaintiff could make at least $105,000 a year.

the telephone log and time sheets reflecting the telephone calls and work completed for the LMS. Ms. Sauerhoff had an Appeals Specialist, Joye M. Kelly, speak with a Vocational Team Lead, Eileen Glass, about plaintiff's concerns with the LMS. Based on her own experience and after reviewing the records from Pinder and consulting with the vocational case management personnel, Ms. Sauerhoff determined that the LMS was reliable. On April 26, 2005, HLGIC upheld its decision to terminate plaintiff's benefits.

## II.     Motion to Strike

Plaintiff requests the court to strike any records that were not a part of the administrative record at the time the final decision to terminate plaintiff's long-term disability benefits was made. Plaintiff specifically requests the court to strike (1) Cheryl Sauerhoff's affidavit; (2) defendant's exhibit 1-X; and (3) defendant's exhibit 1-Y[4].

Generally, when reviewing a plan administrator's decision to deny benefits under the arbitrary and capricious standard, the court considers only the "arguments and evidence before the administrator at the time it made [the] decision." *Nance v. Sun Life Assur. Co. of Canada*, 294 F.3d 1263, 1269 (10th Cir. 2002) (holding that the court would not consider material submitted to the plan administrator after its final decision to deny benefits unless the administrator wrongfully refused to reopen the claim to consider the additional material). The court may, however, consider evidence "on the narrow issue of the *manner* in which defendant made its decision, so that the court may determine whether defendant acted arbitrarily in making that decision." *Buchanan v. Reliance Standard Life Ins. Co.*, 5 F. Supp. 2d 1172, 1181 (D. Kan. 1998); *see also Baker v. Tomkins Indus.,*

---

[4]The record does not indicate which exhibits are Exhibits 1-X and 1-Y, but plaintiff states in his summary judgment briefing that the exhibits are Adm R. D000711-760, which are attached to defendant's memorandum in support of its motion for summary judgment (Doc. 32) as exhibits 2-A and 2-B.

*Inc.*, 339 F. Supp. 2d 1177, 1182 (D. Kan. 2004) (holding that the court could review an affidavit that directly shed light on how the plan administrator reached its decision).

The court will not consider evidence that was not a part of the administrative record when the final decision to deny benefits was made unless it falls within the limited exception. Ms. Sauerhoff's affidavit explains how the plan administrator reached its decision; it does not discuss the merits of the administrator's decision. Therefore, the court will consider her affidavit. Plaintiff contends, and defendant does not dispute, that exhibits 1-X and 1-Y were not a part of the administrative record when the decision was made. And defendants do not allege that the exhibits are directly related to the manner in which the decision was made. Based on the record before it, the court finds that it cannot consider exhibits 1-X and 1-Y.

**III.     Cross-Motions for Summary Judgment**

    **A.     Summary Judgment Standard**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The filing of cross-motions for summary judgment does not changed the standard of review. *James Barlow Family Ltd. P'ship v. David M. Munson Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997) ("Where, as here, the parties file cross motions for summary judgment, we are entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts.").

    **B.     Discussion**

### 1.     Standard of Review

"[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  Where, as here, a plan gives the administrator or fiduciary discretion, the court applies an arbitrary and capricious standard. *Hollingshead v. Blue Cross & Blue Shield of Okla.*, No. 05-6276, 2007 WL 475832, at *2 (10th Cir. Feb. 15, 2007).  Under the arbitrary and capricious standard, the decision will be upheld unless there is no reasonable basis for the decision. *Kimber v. Thiokol Corp.,* 196 F.3d 1092, 1098 (1999) ("The decision will be upheld unless it is 'not grounded on any reasonable basis.'") (internal quotations omitted).  But the standard of review is altered when the plan administrator [has] a conflict of interest. *Fought v. UNUM Life Ins. Co. of Am.*, 379 F.3d 997, 1003 (10th Cir. 2004).  The standard remains arbitrary and capricious, but the amount of deference decreases in proportion to the extent of conflict present. *Kimber,* 196 F.3d at 1097; *Hollingshead*, 2007 WL 475832, at *3 ("[A] reviewing court 'undertake[s] a "sliding scale" analysis, where the degree of deference accorded the Plan Administrator is inversely related to the "seriousness of the conflict."'" (quoting *Allison v. UNUM Life Ins. Co. of Am.*, 381 F.3d 1015, 1021 (10th Cir. 2004)).

Plaintiff argues that defendant has an inherent conflict of interest because HLGIC was acting as defendant's agent or was so closely aligned with defendant that it was not independent. Defendant was the issuer of the policy funding the Plan and until just months before the decision was made, defendant was servicing plaintiff's claims though CNA Group Life Assurance Company. Although CNA Group Life Assurance Company was converted to HLGIC before the decision was made, nothing in the record suggests that HLGIC's decision was completely independent from the

review started by CNA Group Life Assurance Company. And the parties stipulated that HLGIC was acting within the scope and course of its agency with defendant. Because the conversion occurred only months before the decision and because HLGIC was defendant's agent, the court finds that the less deferential arbitrary and capricious standard should apply. *See, e.g., Holt v. Cont'l Cas. Co.*, 379 F. Supp. 2d 1157, 1168 (D. Kan. 2005) (finding an inherent conflict of interest when policy issuer's designee exercised its own discretion in determining that the plaintiff's claim did not fall within the coverage of the plan).

Under this standard, the burden shifts to defendant to "demonstrate that its interpretation of the terms of the plan is reasonable and that its application of those terms to the claimant is supported by substantial evidence." *Fought*, 379 F.3d at 1006. And the "court must take a hard look at the evidence and arguments presented to the plan administrator to ensure that the decision was a reasoned application of the terms of the plan to the particular case, untainted by the conflict of interest." *Id.*

### 2. Whether Plaintiff Can Engage in a Gainful Occupation.

To qualify as disabled under the post-24 months disability definition, plaintiff has to be unable to engage in any occupation for which he is qualified that will provide him with an income of at least $105,000 a year. Plaintiff's argument is confined to the vocational aspect of the disability definition; he argues that the record does not support a finding that he can work in a gainful occupation. Plaintiff alleges that the LMS is flawed, misleading, and fraudulent and that HLGIC should not have relied on it. Plaintiff further contends that without the LMS, the record—specifically the affidavits submitted by plaintiff—supports a finding that he cannot get a job making at least $105,000 a year. The parties do not dispute that plaintiff suffers from unpredictable episodes of diarrhea. They also agree that, even with regular doses of Lomotil, plaintiff can perform

-9-

sedentary work but must have immediate access to a restroom.  Thus, the question is whether plaintiff can work in a gainful occupation with these limitations.

As mentioned above, all three doctors concluded that plaintiff could perform sedentary work as long as he has immediate access to a restroom.  Dr. Barnett did not place limitations or restrictions on plaintiff and stated that plaintiff's condition can sometimes be controlled with Lomotil.  The LMS concluded that there were at least five alternative gainful occupations available in plaintiff's geographical location that plaintiff could perform with his limitations and that three of them had current job openings.

Plaintiff argues that Dr. Apter's conclusions are unreliable because the Florida Department of Health brought an ethics complaint against him.  The allegations by the Florida Department of Health were in a specific Florida case and do not relate to plaintiff's case.  And in any event, HLGIC had Dr. Bliss conduct a second review of plaintiff's medical condition; Dr. Bliss's conclusions were consistent with Dr. Apter's.  Dr. Apter's and Dr. Bliss's conclusions regarding plaintiff's ability to work are consistent with Dr. Barnett's conclusions.  Additionally, the record supports the conclusion that plaintiff could work in a sedentary occupation as long as he had access to a restroom.  Therefore, the court finds that plaintiff's concerns regarding the reliability of Dr. Apter's conclusions do not invalidate HLGIC's findings.

Plaintiff also argues that the LMS is fatally flawed and should be disregarded because when his attorney contacted the survey participants, they did not remember being contacted by Pinder for the survey and some denied having the job openings that were recorded in the LMS.  Without providing any legal authority for its position, plaintiff argues that HLGIC should have contacted the survey participants to confirm the LMS or requested a second LMS.  The court disagrees.  Most of the affidavits submitted by plaintiff to contradict the LMS were unsigned or provided by people

without personal knowledge about the validity of the information in the LMS.  Although Ms. Gramlich states that she leases space to independent contractors for AFLAC, she does not state whether she is an employee of AFLAC, the title of her position, or how long she has worked there. Nor does she provide any information suggesting she would know if someone named "Pat" was interviewed by Pinder—the LMS does not say that "Pat" offices in the Kansas City, Missouri location.  Additionally, Ms. Parker's affidavit states that she did not speak with Pinder and that she is a secretary, not a manager, but her affidavit does not say whether there is another individual named "Jean Parker" that is a manager at IBT, Inc.   The sworn affidavits raise possible inconsistencies in the LMS, but they are not conclusive proof that the LMS was fraudulent.

Upon receiving plaintiff's allegations regarding the LMS and the affidavits, HLGIC investigated the LMS.  HLGIC requested documentation from Pinder showing the work completed for the LMS.  The documentation from Pinder shows that Pinder spent 18.2 hours on the LMS and conducted numerous telephone calls.  HLGIC also consulted its vocational assessment personnel.  It is clear that HLGIC considered the affidavits, but did not find them persuasive.  After reviewing the record, the court finds that HLGIC reasonably relied on the LMS.

According to the LMS, there are several gainful occupations in which plaintiff can work that will accommodate his limitations.  Thus, the court finds defendant's conclusion that plaintiff can work in a gainful occupation with his limitations was not arbitrary and capricious.  For the forgoing reasons, plaintiff's motion for summary judgment is denied.  Plaintiff's request for attorney fees is denied as moot.

### 3. Whether HLGIC's Decision to Terminate Plaintiff's Benefits is Supported by Substantial Evidence.

Defendant argues that it is entitled to summary judgment because HLGIC's decision to terminate plaintiff's benefits is supported by substantial evidence. Defendant contends that plaintiff's physical impairment, the degree of its severity, and the availability of gainful occupations support its decision. Plaintiff's arguments focus on the lack of gainful employment, which was discussed above.

In reaching its decision, HLGIC relied on the policy language, medical evidence, video surveillance, vocational assessment, the LMS, and plaintiff's statements. Plaintiff reported that he visits the restroom 9.5 times a day, that his condition is unpredictable, and that he is in constant pain. But the video surveillance showed plaintiff doing yard work and being away from his house for a few hours at a time. Plaintiff's treating physician, Dr. Barnett, did not place restrictions or limitations on plaintiff and concluded that plaintiff could perform sedentary work if he had immediate access to a restroom. After reviewing plaintiff's medical record, Dr. Bliss concluded that plaintiff could perform a sedentary occupation as long as he had access to a restroom. As explained above, the LMS reported that there were gainful occupations that plaintiff could perform. Plaintiff submitted affidavits of several witnesses to contradict the LMS, but the majority of the affidavits are unsigned, unsworn, and not notarized. Plaintiff's own affidavit is the only sworn affidavit providing information about whether plaintiff could earn over $100,000 at a sedentary occupation. While the information provided by plaintiff is relevant to his claim, HLGIC is not required to give more weight to plaintiff's testimony than to the other evidence in the record. The affidavits may cast doubt on the LMS, but HLGIC investigated the LMS and determined it was reliable. There is ample evidence in the record to support HLGIC's decision. The court finds that defendant has demonstrated that its interpretation of the terms of the Plan is reasonable and that its application of those terms to plaintiff is supported by substantial evidence.

The court has considered all of the arguments presented by the parties, although they are not all discussed here. Some of the arguments are irrelevant to the claims at issue in this case. Others have been rendered moot by the court's decision here.

**IT IS THEREFORE ORDERED** that Plaintiff Anthony Niedens' Cross-Motion for Summary Judgment (Doc. 29) is denied.

**IT IS FURTHER ORDERED** that Defendants Continental Casualty Company and The Hartford Financial Services Group, Inc.'s Motion for Summary Judgment (Doc. 31) is granted.

**IT IS FURTHER ORDERED** that Niedens' Motion to Strike Affidavit and Records Not Contained in the Administrative Record at the Time of the Decision to Deny Niedens' His Long Term Disability Benefits (Doc. 38) is granted in part and denied in part.

Dated this 28th day of March 2007, at Kansas City, Kansas.

**s/ Carlos Murguia**

**CARLOS MURGUIA**
**United States District Judge**